# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| CERENCE OPERATING COMPANY, | ) |
| Plaintiff, | ) Civil Action No. 2:23-cv-00482-JRG-RSP |
| v. | ) |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC. | ) |
| Defendants. | ) |

## SAMSUNG'S MOTION TO EXCLUDE THE OPINIONS OF
## <u>JIM W. BERGMAN</u>

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i
TABLE OF AUTHORITIES ...................................................................................................... ii
I.    INTRODUCTION ........................................................................................................... 1
II.   FACTUAL BACKGROUND ......................................................................................... 1
      A.    The Patents-in-Suit And Accused Products ......................................................... 1
      B.    The Bergman Report ............................................................................................ 2
III.  LEGAL STANDARD ..................................................................................................... 6
      A.    *Daubert* Standard ................................................................................................. 6
      B.    Damages In Patent Infringement Cases ............................................................... 6
IV.   ARGUMENT ................................................................................................................... 7
      A.    Bergman's Opinions Based On The Allenby Survey Should Be Excluded ........... 7
      B.    Bergman's Profit Split Should Be Excluded ......................................................... 8
V.    CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*CSIRO v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................................................6

*DataQuill Ltd. v. High Tech Computer Corp.*,
  887 F. Supp. 2d 999 (S.D. Cal. 2011).........................................................................................9

*Dishman v. BBVA Compass Bank*,
  No. 1:10-cv-205-RC, 2011 WL 13216959 (E.D. Tex. Feb. 16, 2011) ......................................8

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-037333, 2022 WL 2670163 (N.D. Cal. Jan. 12, 2022).......................................9, 10

*EcoFactor, Inc. v. Google LLC*,
  137 4th 1333 (Fed. Cir. 2025).....................................................................................................6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................7

*Fundamental Innovation Sys. Int'l v. Anker Innovations Ltd.*
  No. cv-21-339-RGA, 2025 WL 459916 (D. Del. Feb. 11, 2025)......................................10, 12

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997).............................................................................................................6, 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)......................................................................................................7

*Open Text S.A. v. Box, Inc.*,
  No. 13-cv-4910, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015)...................................................9

*Sims v. Kia Motors of Am., Inc.*,
  839 F.3d 393 (5th Cir. 2016) .....................................................................................................8

*Sonos, Inc. v. Google LLC*,
  No. C-20-6754, 2023 WL 3933071 (N.D. Cal. June 9, 2023)...........................................10, 12

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).....................................................................................6, 7, 8, 9

*Unwired Planet, LLC v. Apple Inc.*,
  No. 13-cv-04134, 2017 WL 589195 (N.D. Cal. Feb. 14, 2017)............................................7, 8

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") respectfully move to exclude the damages opinions of Jim W. Bergman submitted on behalf of Plaintiff Cerence Operating Company ("Cerence").

## I. INTRODUCTION

In his report, Cerence's damages expert Jim Bergman commits two fundamental errors that render his opinions on damages unreliable and unhelpful to the factfinder.

*First*, Bergman's reasonable royalty opinion relies on a flawed and unreliable input he adopted from Cerence's survey expert, Dr. Greg Allenby. As explained in the concurrently-filed motion to exclude Dr. Allenby's opinions, the survey Dr. Allenby conducted to purportedly assess the premium smartphone consumers would pay for the alleged invention is irrelevant, flawed, and unreliable, including because the surveyed features are unrelated to the alleged inventions of the asserted patents. Because Bergman has no other methodology of calculating damages, if Dr. Allenby's opinions are excluded, so too should Bergman's quantification.

*Second*, Bergman's percentage split of the purported incremental profits—which he applies to arrive at his ultimate reasonable royalty amount—is arbitrary and unreliable because he relies on (i) data points from three agreements both he and Cerence's technical expert Dr. Nikil Jayant deemed non-comparable, and (ii) the gross profit margins of the two Samsung defendants in this case, SEC and SEA, which are irrelevant to any profit split that would have been negotiated between Samsung and Cerence for a hypothetical license.

## II. FACTUAL BACKGROUND

### A. The Patents-in-Suit And Accused Products

Cerence asserts two patents in this case: U.S. Patent Nos. 11,087,750 ("the '750 Patent") and 11,393,461 ("the '461 Patent") (collectively, "the Asserted Patents"). According to Bergman, both patents describe a particular way a voice assistant in a mobile device is accessed while in low

1

power or idle modes. Citing Dr. Jayant, Bergman states that ███████████

███████████████████████████████████████████████████████████████

███████████ DeWitt Decl. Ex. 1 ¶ 32.[1,2] The '461 Patent ███████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████ *Id.* ¶ 35.

Citing Cerence's survey expert Dr. Allenby, Bergman refers to the claimed inventions of the Asserted Patents as distinct "███████████████," labeling the '750 Patent's alleged invention as the "███████████" or "███████████" and the '461 Patent's alleged invention as the "███████████." *Id.* ¶¶ 96-102, 177. But Dr. Allenby's descriptions, which Bergman repeats, do not correctly reflect what is claimed by either patent and are inconsistent with the descriptions given by Cerence's technical expert, Dr. Jayant, as described above. Among other things, both of Dr. Allenby's definitions ███████████

███████████████████████████████████████████████████████████████

█████████████████████████. *Id.* ¶¶ 167-68.

Bergman claims that "███████████████████████████████████████████

███████████████████████████," *i.e.*, Samsung smartphones, tablets, and watches that can run the voice assistant applications Samsung Bixby and Google Assistant. *Id.* ¶¶ 91, 92-95.

**B.    The Bergman Report**

Bergman served an expert report opining that Cerence is entitled to ███████████

███████████████████████████████████████████████████████████████.

---

[1] "DeWitt Decl." refers to the Declaration of Amy L. DeWitt in Support of Samsung's Motion to Exclude the Opinions of Jim W. Bergman, submitted concurrently herewith.

[2] Unless otherwise noted, all emphasis is added.

2

Ex. 2 ¶ 3.[3] In calculating damages, Bergman uses the "income approach," which "calculates the incremental benefits attributable to each of the asserted claims of the patented technology . . . ." Ex. 1 ¶ 117.

### 1. Bergman's Reliance On The Allenby Survey

Critical to Bergman's income approach is an input from Dr. Allenby's report. The content and flaws of Dr. Allenby's survey and his related opinions are set forth in more detail in Samsung's concurrent motion to exclude his opinions. Of pertinence here is Dr. Allenby's so-called "Economic Value Premium" or "ERP." Bergman states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1 ¶ 170. Although Dr. Allenby estimated an "ERP1" and a separate "ERP2," Bergman relies on the ▇▇▇ ERP2. *Id.* ¶ 177. Bergman adopts wholesale Dr. Allenby's ERP2 estimates— ▇▇▇▇ —and claims ▇▇▇ ▇▇▇ *Id*.

### 2. Bergman's Quantification Of Incremental Profits

To calculate incremental profits for the '750 Patent, Bergman multiplied Dr. Allenby's ▇▇▇ by net revenue for all the Accused Products to arrive at ▇▇▇ ▇▇▇ Ex. 2, Schedule 2.1U. Bergman then deducts ▇▇▇ for

---

[3] On June 20, 2025, Cerence served an Amended Expert Report of Jim W. Bergman ("Amended Report") that reduced Bergman's damages opinion from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ " Ex. 2 ¶ 2.

3

SEC's cost to manufacture the products and R&D. *Id.* The result is his ███████ ███████ for the '750 Patent. *Id.* Bergman followed the same approach for the '461 Patent, with the exception of using a ███████ ███████. Ex. 2, Schedule 2.2U.

### 3. Bergman's Incremental Profit Split

For both patents, Bergman multiplies the above incremental profit amounts by ███████ ███████. In arriving at this split, Bergman claims that ███████ ███████ Ex. 1 ¶ 318. As alleged support, Bergman first relies on ███████ ███████:

- ███████
- ███████
- ███████

4

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████ ████

In addition to using the data points derived from ██████████████████████████, Bergman compares the profits between the two Samsung defendants in this case, parent SEC and subsidiary SEA. ██████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

██ ██████████████████████████████████████████████████████████████
████████████████████████████████████

Bergman contends that ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* ¶ 322. In this scenario, Bergman opines that ████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* ¶ 328. Thus, according to Bergman's analysis, █████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████, Bergman opines that ██████████████████████████████████████████████ ███████████████████████████████████████ *Id.* ¶ 332.

### III.   LEGAL STANDARD

#### A.   *Daubert* Standard

Fed. R. Evid. 702 creates "a gatekeeping role for the [trial] judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "In 2023, Rule 702 was amended to clarify that the proponent of expert testimony bears the burden of establishing its admissibility and to emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1339 (Fed. Cir. 2025) (en banc). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

#### B.   Damages In Patent Infringement Cases

Under 35 U.S.C. § 284, a patent owner bears the burden of proving "damages adequate to compensate for the infringement." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed.

6

Cir. 2011). "A damages theory must be based on sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). "The patent holder should only be compensated for the approximate incremental benefit derived from his invention." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014). Damages testimony based on unreliable assumptions and analysis cannot support a damages award and must be excluded. *Uniloc*, 632 F.3d at 1315. "[G]iven the great financial incentive parties have to exploit the imprecision in patent valuation, courts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable to support a damages award." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

## IV. ARGUMENT

Bergman's quantification of damages is based on the unreliable "ERP2" calculation from the flawed, unreliable, and irrelevant survey conducted by Cerence's survey expert, Dr. Allenby. His profit split methodology is unreliable, has been rejected by courts in past cases where Bergman proposed the same methodology, and otherwise does not fit the facts of the case. Bergman's opinions, therefore, should be excluded.

### A. Bergman's Opinions Based On The Allenby Survey Should Be Excluded

Samsung has concurrently filed a *Daubert* motion to exclude Dr. Allenby's survey and related opinions on the basis that his survey is divorced from the subject matter of the Asserted Patents, while his ERP2 measure is unmoored to the facts of this case. Because Bergman's quantification of a reasonable royalty amount relies on Dr. Allenby's survey and resulting ERP2 measure as a necessary premise, should the Court grant Samsung's motion to exclude Dr. Allenby's opinion, it should also exclude Bergman's reasonable royalty opinions. *See, e.g., Unwired Planet, LLC v. Apple Inc.*, No. 13-cv-04134, 2017 WL 589195, at *1 (N.D. Cal. Feb. 14, 2017) (finding that where a survey's results are excluded, a court must also exclude "all damages

7

estimates hinging on those survey results"); *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 405 (5th Cir. 2016) (affirming exclusion of expert's theory because it relied on another expert's inadmissible theory); *Dishman v. BBVA Compass Bank*, No. 1:10-cv-205-RC, 2011 WL 13216959, at *4 (E.D. Tex. Feb. 16, 2011) ("As [the damages expert] relied entirely on [another expert's] unreliable data in calculating his damages . . . he cannot testify as to damages based on [the unreliable data].").

For the foregoing reasons, paragraphs 162-77, 188, 197, 199, 208, 312, and 333 of Bergman's report and paragraph 2 of Bergman's Amended Report should be excluded.[5]

### B. Bergman's Profit Split Should Be Excluded

To arrive at his profit split, Bergman relies on two flawed inputs: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and (2) a fabricated profit "split" he devised by comparing the purported gross margins between the parent SEC and subsidiary SEA defendants. For the reasons identified below, Bergman's profit splitting opinions in paragraphs 318-333 of his report should be excluded.

#### 1. Bergman's Use Of Advertising Revenue-Share Splits From Agreements He Deemed Non-Comparable Is Legally Improper



Nonetheless, despite disclaiming any comparability, Bergman relies on these three agreements as data points in support of his quantification of a profit split that feeds into his ultimate reasonable royalty amount, which is improper and warrants exclusion. *See*, *e.g.*, *Uniloc*, 632 F.3d at 1316 (holding that a patentee may

---

[5] By implication, Schedules 1, 2, 4 and 11 of Bergman's report and Amended Report should also be excluded.

8

not rely on license agreements that are "radically different from the hypothetical agreement under consideration to determine a reasonable royalty") (cleaned up); *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910, 2015 WL 349197, at *5 (N.D. Cal. Jan. 23, 2015) ("But here, both Open Text and [the expert] agree that she affirmatively rejected the licenses as non-comparable. Because of this and the fact that the 3% to 45% 'bargaining range' is unquestionably based on inappropriate licenses, the range cannot be admitted into evidence or used in any way to determine a royalty rate."); *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) (finding that opinions of a damages expert "who relies on non-comparable licenses in reaching his royalty rate should be excluded"). Because both Dr. Jayant and Bergman conclude the agreements are not comparable, Bergman's reliance on the revenue-share percentages from the agreements to reach his royalty rate must be excluded.

Even if his reliance on the non-comparable agreements wasn't legally improper, Bergman performs no analysis and cites no authority that would support his use of ▮▮▮▮▮▮ in those agreements between Samsung and third parties as a proxy for splitting incremental *profits* attributable to the *claimed invention* of the Asserted Patents in a patent license between Cerence and Samsung. Bergman's flawed profit-split approach here is similar to his excluded profit-split opinions in *Droplets, Inc. v. Yahoo! Inc.*, in which he relied on a return-on-investment (ROI) analyses, "customer lifetime value" documents, and a gross margin analysis to arrive at ▮▮▮▮▮▮ 35% attributed to plaintiff and 65% attributed to defendants. No. 12-CV-03733-JST, 2022 WL 2670163, at *1-2 (N.D. Cal. Jan. 12, 2022). The court found Bergman's profit split "relies on factors not sufficiently tied to the case," including his failure to "offer any explanation for how the projects [in the proxy documents] are similar to the accused features." *Id.*

9

Other decisions have similarly rejected profit splitting opinions where, as here and in *Droplets*, the split was based on circumstances that did not involve both parties to the case, comparable technology, or the accused features. For example, in *Fundamental Innovation Systems International LLC v. Anker Innovations Ltd.*, the court excluded the damages expert's profit split where it failed to be "tied to the facts and parties of this case, aside from [defendant] being a party to the case" and where "[t]here is no connection to [plaintiff] or the technology at issue." No. cv-21-339-RGA, 2025 WL 459916, at *16 (D. Del. Feb. 11, 2025). Likewise, in *Sonos, Inc. v. Google LLC*, the court excluded a revenue split opinion where the expert opined the patentee was the developer and Google was the owner of the app store. No. C-20-06754, 2023 WL 3933071, at *9 (N.D. Cal. June 9, 2023). The court reasoned: "recognizing that the Google Play Store revenue split is not specific to [plaintiff] Sonos or the technology claimed by the patents-in-suit, it is unclear what connection this revenue split had to the facts in this case beyond that this case happens to involve [defendant] Google and that Google happens to own an app store." *Id*.

Bergman provides no support for using ▮▮▮▮▮▮ that are wholly unrelated to the Asserted Patents, Samsung's contributions to the Accused Products, or the accused Bixby and Google Assistant features. 

▮▮▮▮▮▮. *Sonos*, 2023 WL 3933071, at *9.

### 2.    Bergman's Parent-Subsidiary Gross Profit Split Should Be Excluded

The second input to Bergman's profit splitting opinions is also fatal to those opinions. Bergman relies on a fabricated comparison between the two Samsung defendants, SEC and SEA, that is not based on any actual evidence of a profit split for patent licensing (or any other purpose)

10

between the two related entities, and otherwise is not a proxy for how the parties would split incremental profits at the hypothetical negotiation.

*First*, Bergman claims that Samsung has ▮▮▮▮▮▮▮▮▮▮ but he points to no evidence demonstrating that ▮▮▮▮▮▮▮▮▮▮. Ex. 1 ¶ 321. Indeed, Bergman admits ▮▮▮▮▮▮▮▮▮▮ Ex. 1 ¶¶ 328, 321. Bergman's opinions, without evidentiary support, are nothing more than improper *ipse dixit* that should be excluded. *Gen. Elec. v. Joiner*, 522 U.S. at 146.

*Second*, Bergman attempts to use relative profit margins between a parent and subsidiary as a proxy for how Samsung and Cerence would split any incremental profits at the hypothetical negotiation. In doing so, he fails to consider the numerous differences between (i) the parent/subsidiary relationship of SEA/SEC and (ii) the hypothetical negotiation between Samsung/Cerence, which makes such a comparison flawed and irrelevant. For example, ▮▮▮▮▮▮▮▮▮▮, Ex. 7 at 145:17-146:5, which could potentially affect gross margin. ▮▮▮▮▮▮▮▮▮▮. *Id.* at 146:11-15.

*Third*, Bergman labels SEA as a "▮▮▮▮" that "essentially operates as a reseller and promoter of SEC products." Ex. 1 ¶ 322. But Bergman admitted at his deposition that ▮▮▮▮▮▮▮▮▮▮

11

██████████████████████████████████████████████████

Ex. 7 at 148:11-149:22. In contrast, ██████████████████████████████████. *Id.* at 149:23-150:2; *see id.* at 150:3-6 ██████████████████████████████

██████████████████████████████████████).

Like his flawed analysis relying on advertising share provisions, a gross profit split between a parent and subsidiary bears no connection to the plaintiff, the technology at issue, or the hypothetical license at issue. *Fundamental*, 2025 WL 459916, at *16; *Sonos*, 2023 WL 3933071, at *9. Bergman's reliance on a parent-subsidiary profit split based on their respective gross margins is therefore unreliable and further supports striking his profit splitting opinions.

## V. CONCLUSION

For the foregoing reasons, Samsung respectfully requests exclusion of paragraphs 162-77, 188, 197, 199, 208, 312, and 318-333 of Bergman's report, paragraph 2 of Bergman's Amended Report, and the entirety of Schedules 1, 2, 4, and 11 of Bergman's report and Amended Report.

Dated: June 23, 2025                              Respectfully submitted,

By:   */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
**Gilliam & Smith, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Patrick C. Reidy
patrick.reidy@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602
Telephone: (312) 583-2424
Facsimile: (312) 583-2360

Amy L. DeWitt
Amy.DeWitt@arnoldporter.com
Jin-Suk Park
jin.park@arnoldporter.com
Ali R. Sharifahmadian
Ali.Sharifahmadian@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5555

Ryan M. Nishimoto
ryan.nishimoto@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Darin W. Snyder
dsnyder@omm.com
Luann L. Simmons
lsimmons@omm.com
Mark Liang (pro hac vice)

13

mliang@omm.com
Bill Trac
btrac@omm.com
**O'Melveny & Myers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Jeffrey D. Baxter (Tex. #24006816)
jbaxter@omm.com
**O'Melveny & Myers LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201-2692
Telephone: (972) 360-1900

Renia Zervos (pro hac vice)
rzervos@omm.com
**O'Melveny & Myers LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated:  June 23, 2025 /s/ *Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

On June 19, 2025, pursuant to Local Rule CV-7(h), counsel for Samsung met and conferred with counsel for Cerence Operating Company, and counsel for Cerence Operating Company indicated that Cerence Operating Company is opposed to the relief sought by this Motion.

Dated:  June 23, 2025 /s/ *Patrick C. Reidy*
Patrick C. Reidy

15